■ JUDITH RODRIGUEZ, as Administratrix of the Estate of AMBROSIO RODRIGUEZ, Deceased, Appellant, v. STATE OF NEW YORK, Respondent.— Appeal from a judgment of the Court of Claims dismissing the claim for wrongful death. The claimant's deceased husband was admitted to the Rockland State Hospital in 1953 and his condition was diagnosed as dementia præcox, paranoid type. Routine physical examinations were performed upon him including blood and urine examination, temperature, blood pressure, pulse and a chest X ray or photofluorogram. These together with his past history revealed nothing out of the ordinary as to physical condition and it was decided that he should be given electrotherapy or shock treatments. He was given 13 of these treatments and upon receiving the 14th he died. An autopsy revealed the presence of a diseased heart and it is undisputed that the shock treatment imposed upon the decedent's heart condition caused his death. The claim for wrongful death is based on the alleged negligence in failing to discover the heart condition before subjecting the decedent to shock treatments. The claimant produced the testimony of Dr. Barnett, a specialist in radiology, who was of the opinion that the X ray taken of the decedent showed a moderately elongated aorta, suggested slight left ventricular enlargement and hypertrophy and thus was the picture of a diseased heart. Dr. Golb, a psychiatrist, testified that he would not administer shock treatments to a patient with a heart condition because of the danger of death resulting and that the decedent could have been cured of his mental condition without such treatment. However, he stated that before giving shock treatments he only examines the patient's heart, listens to the heart sounds and takes the blood pressure. Dr. Edson, a roentgenologist, testified for the State that the X ray showed no evidence of an enlargement of the heart shadow and showed a normal heart. He explained that the X ray or photofluorogram taken here is primarily for examining the lungs and that it gives a somewhat distorted picture of the size of the heart although a determination can be made from it whether there is any heart enlargement. Dr. Lewis, a cardiologist, testified that on the basis of the physical examination and X ray of the decedent he would have recommended the use of shock treatments and he stated that the method used to ascertain the decedent's heart condition was the proper and standard method. As to the condition of decedent's heart, as shown by autopsy, he stated that such could exist anatomically without outward manifestations, and he was of the opinion that the X ray showed no heart condition. The attending psychiatrist, Dr. Alexander, testified that the decision to give the decedent shock treatments was arrived at under normal procedures, that after the decision was made he checked the decedent's history and the records on his physical condition including the X ray and he found no indication of any heart condition. He also had a summary of decedent's medical condition from Bellevue Hospital which gave no indication of any heart condition. Indeed the claimant herself gave no history of the decedent having any illness suggestive of heart trouble. Dr. Alexander stated that the accepted procedure, in that as well as other hospitals, was used to determine the condition of the decedent's heart and that electrocardiograms were not taken as a matter of routine unless the patient was over 45, the decedent being 38. The court below found that the general physical examination of decedent disclosed no pathology of the heart, that the claimant did not establish by a fair preponderance of the evidence that the X ray showed any abnormality of the heart or that there was anything indicating that an electrocardiogram should have been taken and that decedent's death was not shown to have been

due to any negligence of the State in decedent's care and treatment. The alleged negligence was the failure to discover decedent's heart condition. Testimony was produced by the State as indicated above that the procedure used here in examining the decedent was the correct and accepted practice and no evidence to the contrary was produced by the claimant. The only other possible basis for a finding of negligence is the failure to correctly interpret the X ray. A question of fact was presented as to the correct interpretation of the X ray with the testimony of claimant's expert being contradicted by all three of the State's medical witnesses on this point. Even if the court had found that the X ray should have been interpreted as showing signs of a heart condition it is doubtful that a judgment for claimant could be based on such finding since such an error in interpretation would no doubt be a "mere error in judgment" for which liability would not attach. The court below, in our opinion, correctly found that the claimant failed to show that decedent's death resulted from negligence by the State in his care and treatment. Judgment unanimously affirmed, without costs.